OPINION
Defendant-appellant/cross-appellee, Able Drywall Company, appeals from a judgment entered on a jury verdict awarding damages to plaintiff-appellee/cross-appellant, Mark Walton, on his claims for personal injuries against Able. Able contends that the verdict is against the manifest weight of the evidence. Able further contends that it was denied a fair trial as the cumulative result of multiple errors. Finally, Able claims that the trial court erred by failing to order Walton to reimburse the Bureau of Workers' Compensation for amounts it paid Walton, or paid on Walton's behalf. In his cross-appeal, Walton contends that the trial court erred by reducing the award of damages.[1]
We conclude that the evidence in this record would not support a finding that Able's negligence proximately caused Walton's injury without the application of the doctrine of res ipsa loquitur, which the evidence in the record arguably might have supported. Because the jury was not instructed on the doctrine of res ipsa loquitur, the jury was forced to speculate in a legal and evidentiary vacuum. Because the jury's verdict was necessarily speculative in the absence of a proper res ipsa loquitur instruction, the judgment of the trial court is Reversed, and this cause is Remanded for a new trial.
 I
In July, 1998, Kendall Construction Company was the general contractor on a building project for Interstate Ford. Mark Walton was a field superintendent for Kendall on the project, and was in charge of a construction crew on the site. Able was also involved in project as a sub-contractor; specifically, Able was responsible for applying an E.I.F.S. finish to the facade of the building.[2]
On the morning of July 1, 1998, three Able employees began erecting a scaffold along a portion of the building prior to applying the E.I.F.S. finish. The scaffolding consisted of a base upon which two frames were attached by "x" braces, a walk board, or "pick," sitting atop the frame, and guardrails attached to posts. The walk boards have hooks at each end, which are attached to the frames. They also have a safety latch in the middle of the underside, which is attached to the frame and prevents the board from coming up off the frame.
While the Able employees were still attaching the guard rails and posts, Walton and Gary Hester, a member of the Kendall crew, climbed up on the scaffold and began attaching plywood panels to the building facade. After approximately one and one-half to two hours, Walton and Hester had almost completed the plywood application. However, before they could finish, the walk board they were standing on fell, and both men fell to the ground. Walton sustained an injury to his ankle requiring two surgeries.
Walton brought this action against Able and Kendall. In his complaint, Walton alleges that the negligent erection and inspection of the scaffolding by Able proximately caused Walton to fall and injure himself.[3] After a trial, a jury awarded $83,000 ($5,000 for nature and extent of injuries, $7,000 for pain and suffering, $10,000 for medical expenses, $10,000 for lost wages, $23,000 for future pain and suffering, $8,000 for future medical expenses, and $20,000 for future lost wages) in damages to Walton, but assessed thirty-nine per cent of the liability for the accident against him. Therefore, his award, after reduction for comparative negligence, was $50,630. Subsequently, Able filed a motion for remittitur and the trial court reduced the jury award for medical expenses to $8,066.53, future medical expense to $4,000 and the future lost wages to zero.
From this reduced judgment, Able appeals. Walton cross-appeals.
 II
Able's First Assignment of Error states as follows:
 THE JURY'S VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE BECAUSE THERE WAS NO COMPETENT, CREDIBLE EVIDENCE PROVING WHY THE SCAFFOLD BOARDS CAME DOWN.
Able contends that Walton failed to support his claim that it acted negligently, because he failed to adduce any evidence demonstrating that it caused the fall.
The standard for reviewing a manifest weight claim is clear. The court of appeals can only reverse a judgment if it is not supported by "competent, credible evidence going to all the essential elements of the case." C.E. Morris Co. v. Foley Constr. (1978), 54 Ohio St.2d 279. Because the trier of fact is in the best position to observe witnesses and weigh their credibility, the appellant must overcome a presumption that the findings of the trier of fact are correct. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 79.
The essential elements of a negligence cause of action are duty, breach of duty, proximate cause, and damages. Anderson v. St. Francis-St. George Hosp., Inc. (1996), 77 Ohio St.3d 82, 84, citing, Menifee v. Ohio Welding Products, Inc. (1984), 15 Ohio St.3d 75, 77. "Liability in negligence is dependent upon the existence of a proximate cause relationship between breach of duty and injury suffered." Hester v. Dwivedi (2000), 89 Ohio St.3d 575, 583.
Walton's claims are based upon his contention that Able had a duty to properly erect the scaffold and to warn him of any defects, and that Able was negligent in both the construction of the scaffold and the failure to warn him of any defects associated with the scaffold.
When Walton and Hester were on the scaffold, the only portions remaining to be erected were the guard rails and guardrail posts. Prior to the accident, Able employees had not yet performed a final inspection of the scaffold. At least one Able employee knew that Hester and Walton were on the scaffold while the guardrails were being installed, but that employee thought Hester and Walton had received permission from the Able foreman to get on the scaffold.
Walton testified that he was familiar with assembling scaffolding, and had worked with it since the early 1980's. He testified that, on the day of the fall, he had visually inspected the scaffolding and that it "looked good." He further testified that he knew that the Able employees were still putting up the guard rails when he climbed on the scaffold. He testified that the guardrails have nothing to do with whether the walk boards stay in place.
Walton testified that the plywood was lifted to where he and Hester were working by a "scissors lift," which lifted the plywood up and between the scaffold braces. He also testified that some of the plywood was handed up by a Kendall employee on a lower level of the scaffold. He testified that a sheet of plywood weighed between forty and sixty pounds.
With regard to Walton's testimony concerning the reason for the fall, the following colloquy is significant:
 Q: If put together properly, do the walk boards give way?
A: No, sir. . . .
* * * *
Q: You don't know why you fell, do you?
A: It collapsed. That's all I know.
Q: Do you know why?
A: I do not.
Q: Do you know if, uh . . . the hook broke?
A: I don't believe that they did.
* * * *
Q: And — Gary Hester was walking towards you?
A: I believe so.
Q: And you were just standing there?
A: Yes, sir.
 Q: And not moving anything, not shaking anything, and it — down it went?
A: Yes, sir
Hester testified that he, too, was familiar with scaffolding. He testified that although he did not "go over the whole scaffolding * * * with a fine tooth comb" it "looked like it was pretty firm scaffolding," and that he did not notice anything put together improperly. Hester testified that Walton was stepping toward him, and that he was not stepping toward Walton. He also testified that he heard wires squeaking when the walk board fell. He also testified that after he fell, he went over to look at the scaffold, and saw a wire. He testified that the scaffolding board had to have been wired together "if it fell out from under" them. However, he admitted that he did not know what the wire went to or what it was doing there. Finally, he testified that neither he nor Walton did anything unsafe or improper while hanging the plywood.
We have found no direct evidence in the record to support a finding that the scaffolding was negligently constructed. Both Walton and Hester testified that it appeared, upon visual inspection, to be properly constructed. No one has testified as to any specific basis for the claim that Able was negligent in erecting the scaffold.
Likewise, we find no support for the claim that Able was negligent for failing to warn Walton that the scaffold was not complete or that it was defective. The record indicates that the section of the scaffold on which Walton fell was complete except, possibly, for the guardrails and posts. However, Walton testified that the guardrails have no bearing on whether the walk boards stay in place. Therefore, the fact that the scaffold may have been incomplete because of a lack of guardrails has no bearing on the issue of negligence, since Walton's fall occurred solely because the walk boards fell.
Also, there is no evidence in the record to establish any defect in the scaffold. Therefore, we cannot say that Able's failure to warn was the proximate cause of Walton's fall.
The only evidence in this case regarding the cause for the fall comes from the testimony of Walton and Hester, who claim that the scaffold was negligently built. This claim is based upon their assertion that the walk boards would not have fallen had the scaffold been properly built. However, this type of argument depends on the application of the doctrine of res ipsa loquitur. "[This] is a doctrine that shifts the burden of proof of negligence when the facts pertaining to the existence of negligence are exclusively within the knowledge of the defendant because of the defendant's exclusive control of the environment." Kemper v. Builder's Square, Inc. (1996), 109 Ohio App.3d 127, 137. "To warrant application of the rule [of res ipsa loquitur] a plaintiff must adduce evidence in support of two conclusions: (1) that the instrumentality causing the injury was, at the time of the injury, or at the time of the creation of the condition causing the injury, under the exclusive management and control of the defendant; and (2) that the injury occurred under such circumstances that in the ordinary course of events it would not have occurred if ordinary care had been observed." Hake v. Wiedemann Brewing Co. (1970), 23 Ohio St.2d 65, 66-67. "There must be evidence tending to prove that the instrumentality causing the injury was under the exclusive management and control of the defendant, which permits the * * * inference that it was the defendant who was negligent." Jennings Buick, Inc. v. Cincinnati (1980), 63 Ohio St.2d 167, 170-171.
There was conflicting evidence on the issue of exclusive control. Furthermore, reasonable minds could reach differing conclusions on the issue of whether the injury would have occurred if ordinary care had been observed. Based upon the evidence in this record, the only basis upon which a jury arguably could have found for Walton would have been on a res ipsa loquitur theory. However, the jury was not instructed on the requirements for invoking res ipsa loquitur. Without proper instructions, the jury was forced to speculate, since the elements of res ipsa loquitur would not ordinarily be within the knowledge of a lay jury.
We conclude that the jury's verdict, in the absence of an appropriate instruction, is against the manifest weight of the evidence, because it forced the jury to speculate in the absence of any direct evidence of negligence and in the absence of an instruction that would have guided the jury in its determination whether to apply the doctrine of res ipsa loquitur, which permits an inference of negligence under certain circumstances. Accordingly, Able's First Assignment of Error is sustained. Upon remand, assuming that the evidence still warrants it, a proper res ipsa loquitur instruction should be given.
 III
Able's Second Assignment of Error states as follows:
 THE CUMULATIVE EFFECT OF THE ERRORS AT TRIAL DENIED ABLE A FAIR TRIAL.
In this Assignment of Error, Able contends that the trial court committed numerous errors. Specifically, it argues that the trial court erred (1) by failing to join Gary Hester as a party; (2) by failing to join the Bureau of Workers' Compensation as a party; (3) by permitting Walton to claim any medical bills or compensation which the BWC had paid; (4) permitting Walton to claim, as damages, the entire amount of medical bills charged when the BWC only paid a portion of those bills; and (5) by permitting Walton to claim future medical expenses and future lost wages.
We note that all of these issues have been rendered moot by our disposition in Part II above. However, as these matters may arise on re-trial, we are inclined to address these issues. We begin with the claim that the trial court erred by failing to join Gary Hester as a party pursuant to Civ.R. 19(A).
Civ.R. 19(A) states in part that:
 A person who is subject to service of process shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (a) as a practical matter impair or impede his ability to protect that interest or (b) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations * * *.
"Civ.R. 19(A) encourages, and Ohio decisional law favors, a policy of liberally granting joinder." Hambleton v. R.G. Barry Corp. (1984),12 Ohio St.3d 179, 184. However, the rule clearly gives trial courts flexibility in determining whether joinder is feasible or necessary.
In this case, at the time of Walton's trial, Hester had not filed any claims against Able. Therefore, we conclude that the trial court did not abuse its discretion in failing to join Hester. However, on remand, Able may certainly renew his motion for joinder.
We next turn to the claim that the trial court erred by failing to join the Bureau of Workers' Compensation as a party. Able candidly admits that this argument must fail based on the Ohio Supreme Court's holding in Holeton v. Crouse Cartage Co. (2001), 92 Ohio St.3d 115.
Next, Able contends that Walton should not have been permitted to claim, as damages, any expenses paid by the BWC. Although Able contends that this argument does not involve the collateral source rule, we conclude otherwise. We have held that a plaintiff may maintain an action in his name for the full amount of damages even when he has made a partial assignment of that claim to an insurer. Sherwood v. Davis (Dec. 15, 2000), Miami App. No. 2000 CA 34, unreported, citing Holibaugh v. Cox (1958), 167 Ohio St. 340, 345-346.
Able alternatively argues that "the prohibition against balance billing means Mark Walton had no personal liability for any medical bills the BWC did not pay," and thus, Walton should not have been entitled to claim the entire amount of the medical charges, but only the portion paid by the BWC. In support, Able cites R.C. 4121.44(K) which states:
 No certified health care provider shall charge, assess, or otherwise attempt to collect from an employee, employer, a managed care organization, or the bureau any amount for covered services or supplies that is in excess of the allowed amount paid by a managed care organization, the bureau, or qualified health plan.
Able contends that this prohibition against balance billing prevents Walton from claiming the difference between the amount of medical expenses paid by the BWC and the actual amount of the medical expenses.
We are unable to find, and Able does not refer us to, any evidence in the record to indicate that this statute applied to Walton's medical providers and that he would therefore not be liable for any excess not paid by the BWC. Therefore, we reject this argument.
We next address the issue of future wages. Able contends that it was prejudiced when Walton made a claim for future wages because his attorney had intimated that no such claim would be made. Able claims that it therefore, did not have adequate notice of the claim and was not able to adequately defend against the claim. Able also contends that the award for future wages was incorrect because the award was not reduced to present value.
On remand, Able should be permitted to conduct discovery regarding this claim, and any claim of prejudice from lack of notice will be rendered moot. Furthermore, while we agree that the award of future lost wages should have been reduced to present value, we do not agree that this can only be accomplished by expert testimony. See, Sahrbacker v. Lucerne (1990), 52 Ohio St.3d 179.
Finally, we turn to Able's claim that the evidence did not support an instruction on future medical expenses. In awarding prospective damages, juries are confined to those damages reasonably certain to follow from the claimed injury. Jordan v. Elex, Inc. (1992),82 Ohio App.3d 222, 230. In this case, Walton's treating physician testified that Walton would be required to undergo "intermittent office evaluations" and to take anti-inflammatory medications in the future. He also testified that Walton would require surgery in the future. Although he could not state with certainty when the need for surgery would arise, he was able to testify within a reasonable degree of medical probability or certainty that the surgery would be required. He was also able to testify to the cost of the surgery. Thus, we conclude that the trial court did not err in permitting the jury to assess damages for future medical expenses.
The Second Assignment of Error is overruled.
 IV
For its Third Assignment of Error, Able claims:
 EVEN IF THE TRIAL COURT WAS CORRECT IN NOT JOINING THE BWC AS A PARTY AND NOT ALLOWING THE JURY TO FIND OUT ABOUT THE SUBROGATION INTEREST OF THE BWC, IT SHOULD HAVE ORDERED MARK WALTON TO PAY THE BWC ITS SUBROGATION INTEREST.
Able argues that the trial court should have required Walton to repay the Bureau of Workers' Compensation all sums that it paid to or on behalf of Walton with regard to his injuries. We find this argument unpersuasive.
First, a reading of the April 28, 2000 decision and entry filed by the trial court indicates that the court ordered the plaintiff to pay the BWC its subrogation interest.
Second, in Holeton v. Crouse Cartage Co. (2001), 92 Ohio St.3d 115, the Ohio Supreme Court found unconstitutional R.C. 4123.931, the Workers' Compensation subrogation statute permitting the Bureau of Workers' Compensation to recoup all amounts which it paid to, or on behalf of, compensation claimants. Therefore, that statute cannot be applied to this case, and the BWC has no subrogation rights to any amounts recovered by Walton. Therefore, the trial court cannot order Walton to make a payment to the BWC to which the BWC is not statutorily entitled. However, we note that, under the Holeton holding, Able will likewise not be obligated to reimburse the BWC.
Accordingly, the Third Assignment of Error is overruled.
 V
Walton's First and Second Assignments of Error in his cross-appeal provide:
 THE LOWER COURT ERRED IN REDUCING MEDICAL EXPENSES AWARDED BECAUSE OF ACTUAL PAYMENT MADE BY THE BUREAU OF WORKERS' COMPENSATION TO DISCHARGE THE EXPENSE AND REDUCING MEDICAL EXPENSES AWARDED BECAUSE OF THE LESSER AMOUNT PLAINTIFF WOULD ACTUALLY PAY TO REIMBURSE THE BUREAU OF WORKERS' COMPENSATION ON ITS LIEN.
 IT IS ERROR FOR A TRIAL COURT TO GRANT A REMITTITUR AS TO AN AWARD OF FUTURE LOST WAGES WHEN THE PRESENT VALUE OF SUCH AN AWARD CAN BE REASONABLY BASED ON EVIDENCE OF THE INJURED PERSON'S WORK HISTORY AND CURRENT PAY RATE AND WITHOUT EXPERT TESTIMONY.
Walton contends that the trial court should not have reduced the amount of medical expenses and future lost wages awarded to him by the jury. These issues have been resolved by our disposition of Able's First and Second Assignments of Error in Parts II and III above.
Specifically, we held that have rejected Able's claim argument that Walton could not cannot claim the entire amount of his medical expenses was incorrect. Therefore, we find conclude that the trial court erred by reducing the amount of the jury's award for medical expenses. If on remand Walton presents satisfactory proof to the jury of future medical expenses, these would need to be reduced to present value, like an award of future lost wages.
With regard to future wages, we held that on remand, Walton will be able to present evidence of future lost wages, and that any amount awarded must be reduced to present value. While we cannot say that the trial court erred by reducing the amount awarded by the jury for this item of damages, we cannot say that it was correct in reducing the amount to zero award of future lost wages to zero. The proper reduction will depend upon the evidence admitted on remand.
Walton's First and Second Assignments of Error are sustained.
 VI
Able's First Assignment of Error having been sustained, and all other assignments Walton's First and Second Assignments of error thereby also having been rendered moot sustained, the judgment of the trial court is Reversed, and this cause is Remanded for a new trial.
BROGAN and GRADY, JJ., concur.
[1] We note that Walton has failed to comply with App.R. 16(A)(3) and (D). Counsel is requested to comply with these Rules of Appellate Procedure in future filings with this court.
[2] E.I.F.S. is an acronym for Exterior Insulation Finish Systems, which is essentially a lightweight stucco finish. It consists of a plywood base upon which wire mesh, styrofoam, and an aggregate finish are applied.
[3] The complaint against Kendall states a claim for an intentional tort. On April 28, 2000, the trial court dismissed the complaint against Kendall pursuant to Civ.R. 12(B)(6). This appeal is not concerned with that claim.